**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JUAN CARLOS MACHADO ESPINOZA** | * | **CIVIL ACTION NO.: 2:23-cv-6204** |
| | * | |
| | * | **SECTION: M(4)** |
| **VERSUS** | * | |
| | * | **JUDGE: BARRY W. ASHE** |
| **WESTBANK FISHING, LLC** | * | |
| | * | **MAG. JUDGE: KAREN WELLS ROBY** |
| | * | |
| | * | **JURY TRIAL REQUESTED** |

**************************************************************************

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE AND/OR LIMIT TESTIMONY OF FUTURE ECONOMIC LOSSES**

**MAY IT PLEASE THE COURT:**

Plaintiff hereby submits the following Opposition to Defendant Westbank Fishing, LLC's Motion in Limine to Exclude and/or Limit Testimony of Future Economic Losses (Rec. Doc. 27).

Defendant's Motion seeks to prevent Plaintiff from presenting evidence to the jury of his future economic losses essentially because he is a Mexican citizen, despite the fact that he was living and working in the United States legally and lawfully at the time of the incident. Defendant's arguments are misplaced and ignore the principles that this Circuit has long endorsed for calculating a Jones Act seaman's future economic losses. As such, the Motion should be denied.

## BACKGROUND

Given the multitude of dispositive motions filed in this matter, the facts of the case have already been articulated to the Court, and Plaintiff will not needlessly restate the facts giving rise to this action.[1] Plaintiff does, however, wish to highlight some facts that are pertinent to the Motion at

[1] Please *see* Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment (Rec. Doc. 26-1) for a resuscitation of the facts of the case.

issue here.

First, as Westbank makes clear, at the time of the incident, Plaintiff, a Mexican citizen, was working for Westbank legally pursuant to a H-2B Visa issued by the United States government.[2] He also worked for Westbank in 2022, and as stated by Mr. Chavarria in his affidavit, Mr. Espinoza had also worked "for another menhaden fishing company in the Gulf Coast region."[3] In fact, Plaintiff had worked in the United States on multiple occasions, including in Alaska from 2020-2021, and in Louisiana in 2012 and from 2014-2016.[4] As Mr. Chavaria notes in his Affidavit, Mr. Espinoza "was an experienced fisherman."[5] Because of his employment in the United States, Mr. Espinoza paid taxes in the United States.[6]

Westbank claims that because it did not obtain H-2B Visas from the U.S. government to hire Mexican citizens for the 2025 fishing season, "Plaintiff's economist economic opinions are purely speculative and not based in reality."[7] However, whether or not he would have worked at Westbank in 2025 or beyond is not the measure of his loss of earning capacity. "[L]oss of earning capacity is not limited to what a plaintiff would have earned at the defendant's company." *In re M&M Wireline & Offshore Servs., LLC*, No. 15-4999, 2017 WL 367660, at *11 (E.D. La. Jan. 24, 2017).

Westbank's arguments have no basis in law or fact, and Plaintiff's economist should be permitted to present all of the opinions contained within his expert report to the jury so that they can be the arbiter of whether to award economic damages to Mr. Espinoza.

---

[2] *See* Rec. Doc. 27-6, Affidavit of Gustavo Chavarria. A copy of Mr. Espinoza's Visa in effect at the time of the incident is attached hereto as Exhibit "A." Personal information has been redacted.
[3] Rec. Doc. 27-6, p.2 ¶9.
[4] *See* Plaintiff's Answers to Interrogatories, attached hereto as Exhibit "B," specifically Answer to Interrogatory No. 4, at p.3.
[5] Rec. Doc. 27-6, p.2 ¶10.
[6] A copy of Mr. Espinoza's 2022 federal tax return is attached hereto as Exhibit "C." Personal information has been redacted.
[7] Rec. Doc. 27-2, p.2.

## LAW AND ARGUMENT

Westbank is seeking to limit or exclude Plaintiff's economist's testimony pursuant to Federal Rule of Evidence 702 because it claims his calculations are "unreliable and legally irrelevant."[8]

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

As the "gatekeeper" of expert testimony, the court must ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The court's gatekeeping function involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable, which compels a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *Id.* at 592-93. Factors for a court to consider when making such a determination are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community. *Id.* at 592-94. The aim is to exclude expert testimony based merely

[8] Rec. Doc. 27-2, p.4.

on subjective belief or unsupported speculation. *Id.* at 590.

Second, to determine the relevancy of the testimony, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence. *Id.* at 591. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Nonetheless, despite the court's role as a gatekeeper, it should not replace the traditional adversary system, and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *See Carr v. Enter. Marine Servs., LLC*, No. 19-14777, 2021 WL 1985163, at *7 (E.D. La. May 18, 2021) (quoting Fed. R. Evid. 702 advisory committee's note, "2000 Amendments"). As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996). Westbank has not offered a legitimate justification for this Court to depart from the "general rule."

## I. <u>The Opinions of Plaintiff's Expert Economist Are Reliable</u>

As a starting point, *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) provides the framework for calculating an economic loss claim under the general maritime law. The court instructed:

> The calculation of damages suffered either by a person whose personal injuries will result in extended future disability . . . involves four steps: estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value.

*Id.* at 117. Importantly, "calculation of the lost income stream begins with the gross earnings of the injured party at the time of injury." *Id.* Here, those are the exact steps that Plaintiff's economist, Mr. Jeffrey Meyers, took in calculating Mr. Espinoza's economic losses.

As Mr. Meyers' report states, Mr. Espinoza's pre-accident earning capacity is "based on Mr. Espinoza's 2022 earnings, adjusted for inflation."[9] Mr. Espinoza's 2022 earnings are what he actually earned while working for Westbank during the 2022 fishing season. Mr. Meyers could not use Mr. Espinoza's 2023 earnings because the injury occurred toward the beginning of the season, and thus he did not have a full season of earnings for 2023. Having properly determined the starting point for the lost income stream based on Mr. Espinoza's gross earnings from the prior year, Mr. Meyers then took all the necessary steps under *Culver* to perform the economic analysis. He states in the report, "You have asked us to calculate the loss of economic capacity utilizing real (net of inflation) growth and discount rates, in compliance with the methodology specified in Culver II, in the above referenced matter."[10]

Westbank does not criticize Mr. Meyers' methodology under any of the five factors enumerated in *Daubert* for a court to consider when assessing the reliability of an expert's testimony. *See Daubert*, 509 U.S. at 592-94. Rather, Westbank claims that Mr. Meyers' opinions are "unreliable" because "they are based on unsupported assumptions."[11] However, as Mr. Meyers' report makes clear, he did not rely on any "assumptions." He calculated the pre-incident earning

[9] Rec. Doc. 27-3, p. 1 n.1.
[10] Rec. Doc. 27-3, p. 1.
[11] Rec. Doc. 27-2, p. 4.

capacity based on Mr. Espinoza's actual earnings, he calculated the post-incident earning capacity based on the vocational rehabilitation report of Ms. Nancy Favaloro, and he relied on appropriate statistical tables and other documentation to determine Mr. Espinoza's anticipated worklife, lost fringe benefits, and lost found. If anything, perhaps Westbank's real issue is with the vocational analysis of Plaintiff performed by Ms. Favaloro, but that is not what they have elected to attack in their Motion. Westbank has not put forth any legitimate basis to undermine the reliability of Mr. Meyer's conclusions.

Although not specifically articulated by Westbank, it appears what they are taking issue with is the pre-accident earning capacity utilized by Mr. Meyers, which forms the foundation for Mr. Espinoza's future losses.[12] Again, the argument is specious because, as noted above, Mr. Meyers used Mr. Espinoza's actual earnings to establish the pre-accident earning capacity, which is what *Culver* requires. This clearly is a situation where Westbank is attacking the "the weight of the testimony," not its reliability as contemplated under FRE 702, which makes it not appropriate for exclusion under *Daubert*, but rather makes "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" before the jury the proper forum for consideration of the evidence and the expert testimony. *Daubert*, 509 U.S. at 596. Nonetheless, Plaintiff will address the merits of Westbank's argument to demonstrate its fallacy.

## II. <u>Plaintiff's Status as a Mexican Citizen Does Not Nullify His Earning Capacity</u>

As stated above, Westbank's Motion questions Plaintiff's earning capacity and his alleged loss thereof due to his injuries from the incident. In *In re M&M Wireline & Offshore Servs., LLC*, Judge Brown stated, "a plaintiff's loss of earning capacity is not narrowly determined by the wages

[12] Westbank does not take issue with the post-accident earning capacity, which is $0, as determined by Plaintiff's vocational rehabilitation expert and subsequently incorporated by Mr. Meyers into his report.

he would have earned working for the same employer." 2017 WL 367660, at *13. Although Plaintiff may not have worked for Westbank in 2025 because they did not get allocated any H-2B Visas, that does not mean that he could not have worked for another fishing company. Westbank points out that he had previously worked for a competitor of theirs, and he had worked for multiple other employers in the United States prior to his time with Westbank.[13] Westbank acknowledges that he was "an experienced fisherman," and his Captain considered him a capable and safe worker.[14] There is nothing to suggest that Plaintiff could not have continued to work in the industry but for the accident.

In *Fleming v. American Export Isbrandtsen Lines, Inc.*, a case out of the U.S. Court of Appeals for the Second Circuit, the Court reinstated a jury verdict awarding a Jones Act seaman damages for loss of earning capacity despite the defendant's claim that his job as a shipboard carpenter no longer existed after his accident. 451 F.2d 1329, 1332 (2d Cir. 1971). The Court held that this fact did not nullify plaintiff's claim, finding that "the defendant's evidence did not establish that there were no ship's carpenters positions available, but only that there were none available on defendant's ships." *Id.* at 1333. The same is true here. The menhaden fishing industry continues to thrive in the Gulf of Mexico,[15] and an earning capacity based on Plaintiff's actual earnings in the industry is entirely appropriate in this case.

Westbank relies on three cases in an effort to bolster its assertion that Mr. Espinoza cannot claim future lost wages because he is a Mexican citizen. Citing to *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.,* 2016 U.S. Dist. LEXIS 195481, 2016 WL 9414205 (E.D. La. May 23,

---

[13] Rec. Doc. 27-6, p.2 ¶9; Exhibit "B," p.3.
[14] Rec. Doc. 27-6, p.2 ¶10; *see* Rec. Doc. 26-6, pp.3-4.
[15] *See* https://www.menhaden.org/gulf-menhaden ("The menhaden fishery continues to be the largest fishery in the Gulf of Mexico by weight.").

2016), Westbank claims that "Judge Nanette Brown dealt with a substantially similar issue and reached the same conclusion we aver Your Honor should reach in this case," and that the "*Tajonera* defendants' accepted arguments are similar to those at issue herein."[16] However, that is not an accurate reading of the case.

*Tajonera* involved an explosion on an offshore platform in the Gulf of Mexico that killed three Filipino workers and injured multiple other individuals. 2016 WL 9414205, at *23. At issue in the opinion cited by Westbank were the calculations of an economist pertaining to one of the decedent's "lost future earnings potential." *Id.* The dispute over this issue was whether the economist's calculations should be excluded because they were made on the basis of what was termed a "prevailing wage" theory,[17] which the defendants contended was not permissible under Louisiana law. 2016 WL 9414205, at *25. The court summarized the economist's opinion at issue as "suggest[ing] that because Louisiana citizens working in the field allegedly earn more than Filipino workers, the lost support claim should be based on those workers' earnings, not Mr. Tajonera's." *Id.*

On its face, their issue has no relevance to Westbank's arguments here because Mr. Espinoza's claims are not "loss of support" claims, they are not governed by Louisiana law, they are not premised on a "prevailing wage" approach, and the only worker's earnings they are based on is Mr. Espinoza's. In fact, in *Tajonera*, the defendants did not challenge the economist's calculations that were based on the decedent's "actual earnings while employed," despite the fact that the decedent was a foreign national and had no guarantee of continuing to work in the United States had

---

[16] Rec. Doc. 27-2, p.4.

[17] The economist defined "prevailing wage" as "the average wage paid to similarly employed workers in a specific occupation in the area of intended employment. The Federal government requires that foreign workers be paid the prevailing wage to ensure that the hiring of a foreign worker will not adversely affect the wages and working conditions of U.S. workers comparably employed." 2016 WL 9414205, at *52. No comparable methodology was used by Mr. Meyers in this case.

he lived. *Id.* at *50-51. The reason that Judge Brown excluded the economist's calculations premised on the "prevailing wage" theory was on the basis that the economist's "subjective belief or unsupported speculation that Mr. Tajonera was not adequately paid during the years he worked offshore, and that in the future he would be paid overtime hours, is not a reliable source of data from which Nickerson may calculate the 'decedent's present earnings, . . . the possibility of a decrease or increase in earnings, . . . and past work record.'" *Id.* at *55. Again, that is not the case here. Mr. Meyers used Mr. Espinoza's actual wages with Westbank to formulate his pe-accident earning capacity. The same methodology went unchallenged in *Tajonera*, rendering Westbank's reliance on the case misdirected.

Next, Westbank cites to *Garcia-Lopez v. Bellsouth Telecoms*, 2010 U.S. Dist. Lexis 44741 (S.D. Ms. May 7, 2010). Again, Westbank misstates the significance of the case. In *Garcia-Lopez*, the court dismissed the Plaintiff's wage loss claims because they were working in the United States illegally at the time of the injury, and they had no intention of returning to their home countries after the incident despite their status as illegal aliens. 2010 U.S. Dist. Lexis 44741, at *19-20 ("None of the plaintiffs have expressed any intention to return to their native countries or produced any evidence to support their lost wages and loss of earning capacity claims."). The court noted that the plaintiffs never filed tax returns, could not identify any prior employers, and provided no evidence to support their economic loss claims. *Id.* They therefore had neither the basis nor the capacity to calculate economic losses in U.S. dollars. In contrast, Mr. Espinoza was working legally in the United States,[18] filed tax returns,[19] and identified multiple prior employers in the United States.[20] But for the injury, he could have continued to work in the United States. His situation is in no way

[18] Exhibit "A."
[19] Exhibit "C."
[20] Exhibit "B," p.3.

analogous to the plaintiffs in *Garcia-Lopez*.

Finally, Westbank cites to *Maldonado v. Kiewit La. Co.*, 152 So. 3d 909, 941-42 (La. App. 1 Cir. 5/30/2024), for the proposition that "using Mexican wage rates was the appropriate measure for calculating the plaintiff's economic losses."[21] *Maldonado* dealt with Louisiana law and its application to an illegal alien who the court noted "was not legally authorized to be in this country, he was subject to deportation at any time." 152 So. 3d at 941. Again, that is not the situation with Mr. Espinoza, but, regardless, the opinion did not involve a *Daubert* challenge and a proposed exclusion of expert testimony. Rather, the decision was a review of a jury determination, and the Court ultimately reduced the economic loss award to the plaintiff based on the court's weighing of the evidence. *Id.* at 942. The case actually reinforces the notion that Mr. Meyers' expert testimony in this case should be presented to the jury for their consideration, rather than excluded at this stage in the proceeding.

In sum, none of the cases offered by Westbank support an exclusion of Mr. Meyers' expert testimony. The jury should be the ultimate arbiter of whether Plaintiff has established an entitlement to economic losses in the amounts calculated by Mr. Meyers. Nothing about his methodology was unreliable, and it obviously is relevant to the proceedings. His opinions should not be excluded. As the Fifth Circuit mused in *Culver*:

> Courts are not prophets and juries are not seers. In making awards to compensate injured plaintiffs or the dependents of deceased workers for loss of future earnings, however, these fact-finders must attempt, in some degree, to gauge future events. Absolute certainty is by the very nature of the effort impossible. It is also impossible to take into account every bit of potentially relevant evidence concerning the tomorrows of a lifetime. The approach we adopt attempts to assure plaintiffs a fair measure of damages, to give defendants a reasonable adjustment for reducing future losses to present value, and to avoid making trials even more complex and their results even more uncertain. It is the product of a balancing of competing values. Ultimately, however, that is the root of all justice.

---

[21] Rec. Doc. 27-2, p.6.

722 F.2d at 123.

Everyone recognizes the current political climate we live in. However, Plaintiff was living and working in the United States legally at the time of his injury. He paid taxes in the United States. He had an established earnings history, and thus earning capacity, in the United States. Westbank's efforts to eviscerate Plaintiff's economic loss claims because he is a Mexican citizen poison "the root of all justice," and this Court should not sanction Westbank's attempt to do so.

**CONCLUSION**

For the foregoing reasons, Plaintiff maintains that the testimony and opinions of his expert economist should not be limited or excluded at trial. Plaintiff respectfully requests that Westbank's Motion in Limine to Exclude and/or Limit Testimony of Future Economic Losses (Rec. Doc. 27) be denied.

Respectfully submitted,

/s/ *Ian F. Taylor*
PAUL M. STERBCOW (#17817)
IAN F. TAYLOR (#33408) (T.A.)
Lewis, Kullman, Sterbcow & Abramson, LLC
601 Poydras Street, Suite 2615
New Orleans, Louisiana 70130
Telephone: (504) 588-1500
Facsimile: (504) 588-1514
sterbcow@lksalaw.com
itaylor@lksalaw.com

AND

/s/ *C. Benjamin Landry*
C. BENJAMIN LANDRY (#20052)
Charles Benjamin Landry, APLC
1309 Lafayette St.
Lafayette, LA 70501
Telephone: (337) 232-9806
Facsimile: (337) 232-9172
cbenlandry@yahoo.com

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 18th day of June, 2025, electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties to this proceeding.

/s/ *Ian F. Taylor*