UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUAN CARLOS MACHADO ESPINOZA            CIVIL ACTION

VERSUS                                   NO. 23-6204

WESTBANK FISHING, LLC                    SECTION M (4)

**ORDER & REASONS**

Before the Court is a motion *in limine* to exclude or limit the testimony of plaintiff's economic experts Harold Asher and Jeffrey Meyers with respect to plaintiff's future economic losses filed by defendant Westbank Fishing, LLC ("Westbank").[1] Plaintiff Juan Carlos Machado Espinoza responds in opposition.[2] Also before the Court is Espinoza's motion partial summary judgment, seeking an order holding: (1) that the vessel on which he was employed and injured, the F/V *Mary Judith* was unseaworthy, and (2) that he did not have any fault in causing or contributing to the accident.[3] Finally, before the Court is Westbank's cross-motion for summary judgment, seeking an order holding: (1) that the *Mary Judith* was seaworthy, and (2) that Westbank was not negligent in causing the accident.[4] Both parties respond in opposition to the other's summary-judgment motion.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

---

[1] R. Doc. 27.
[2] R. Doc. 30.
[3] R. Doc. 26.
[4] R. Doc. 28.
[5] R. Docs. 31; 32.

I.  **BACKGROUND**

This case concerns a maritime personal injury sustained by a Mexican citizen, who was legally working in the United States on a seasonal H-2B visa. On June 6, 2023, Espinoza was working as a Jones Act seaman aboard the *Mary Judith*, a vessel owned and operated by Westbank that was fishing for menhaden off the coast of Louisiana.[6] The *Mary Judith* used two smaller "purse" boats in its fishing operations.[7] At the time of the accident, Espinoza, a deckhand, was working as a seine, or pole, setter on one of the purse boats.[8] As a seine setter, Espinoza was responsible for moving the stern pole between the three notches on the stern of the purse boat as needed while hauling in a catch of fish.[9] The stern pole was made of bendable aluminum and was about eleven feet, six inches long.[10] Espinoza was injured when the stern pole came out of its socket (a slot 30 inches deep) and struck him in the head while he was standing on the deck of the purse boat.[11] He fell and hit his head again on a diesel fuel tank.[12] Espinoza lost consciousness and was medevacked to a hospital in New Orleans.[13] Espinoza filed this suit against Westbank alleging that he suffered a severe traumatic brain injury which has caused him to have repeated seizures and other neurological symptoms.[14] He asserts a general maritime law claim for unseaworthiness and a Jones Act negligence claim.[15] Espinoza seeks damages for past, present, and future physical and mental pain and suffering, permanent physical disability, past and future

---

[6] R. Doc. 1 at 1-2.
[7] R. Docs. 26-1 at 1-2; 28-1 at 1.
[8] R. Docs. 26-1 at 2; 28-1 at 2.
[9] R. Doc. 26-1 at 2; 28-1 at 2.
[10] R. Doc. 28-2 at 3.
[11] R. Docs. 26-1 at 3; 28-1 at 2; 28-2 at 3.
[12] R. Doc. 1 at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 2-3.

medical expenses, loss of wages and wage-earning capacity, and loss of fringe benefits and found.[16]

## II. LAW & ANALYSIS

### A. Westbank's Motion *in Limine* to Exclude or Limit Plaintiff's Economic Experts' Testimony

Espinoza hired AsherMeyers, LLC, a dispute advisory and forensic accounting firm, to calculate his economic losses, which include his future loss of earning capacity, fringe benefits, and found.[17] Partners Asher and Meyers issued a joint report in which they opine that, based on Espinoza's work-life expectancy of 7.5 years and his pre-incident earning capacity of $29,105 per year, his "loss of economic capacity," which includes lost wages, fringe benefits, and found, totals $274,082.[18]

Westbank filed the instant motion *in limine* seeking to exclude or limit Asher and Meyers's testimony, arguing that it is speculative because it does not account for the fact that Espinoza was a seasonal worker who had an H-2B visa for the 2023 fishing season.[19] Westbank explains that the H-2B visa program is a lottery system and Westbank was not allotted any such visas for the 2020, 2021, and 2025 fishing seasons, meaning that it was not permitted to employ any foreign workers for those seasons, including Espinoza.[20] Thus, says Westbank, when it did not receive any H-2B visas, its foreign workers, like Espinoza, lost their wage-earning capacity in the United States, meaning that Espinoza's lost economic capacity should have been calculated using the wages he would have received in Mexico for similar work.[21]

---

[16] *Id.*
[17] R. Doc. 27-3. Found is defined as the money equivalent of the meals, incidentals, and living quarters that a seaman like Espinoza would have received as part of his maritime employment but for his injury. *Id.* at 3.
[18] *Id.* at 1-3.
[19] R. Doc. 27-1 at 2.
[20] *Id.*
[21] *Id.* at 4, 6-8.

In opposition, Espinoza argues that whether Westbank would have received H-2B visas and hired him for any future year is immaterial to his loss of economic capacity because he has worked in the United States for multiple other employers on H-2B visas on multiple occasions, including in Alaska from 2020-2021, and in Louisiana in 2012 and from 2014-2016.[22] Espinoza also contends that his economic experts used proper methodology ("*Culver II*")[23] to calculate his loss of economic capacity.[24]

### 1. *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the

---

[22] R. Doc. 30 at 1-2, 6-7.
[23] *Culver v. Slater Boat Co.,* 722 F.2d 114 (5th Cir. 1983) (en banc).
[24] R. Doc. 30 at 5-6.

Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry.*

*Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

**2. Analysis**

Here, Westbank does not take issue with Asher's or Meyers's qualifications or the methodology they used to formulate their opinions. Instead, Westbank argues that Asher and

Meyers improperly assume that Espinoza would have continued to work in the United States, citing Westbank's inability to continually obtain H-2B visas for every year. However, Westbank's argument discounts that Espinoza has legally worked in the United States on an H-2B visa in other years for other employers. Just because Westbank may not have been able to employ Espinoza in a particular future year does not mean that some other fishing outfit would not have done so. Westbank has not cited, and the Court is not aware of, any cases holding that an economic expert's testimony must be excluded or limited as speculative when the expert assumes that a foreign worker, who had a history of working legally in the United States, would be able to do so in future years.[25] Having weighed Asher and Meyer's report and qualifications against the arguments presented, the Court finds that their education and experience qualify them to express the opinions rendered in their report with respect to Esipoza's future economic losses. Those opinions are relevant and reliable. Westbank's concerns with Asher and Meyer's testimony can be addressed through vigorous cross-examination (especially concerning the factual basis for their assumptions) and the presentation of countervailing expert testimony.[26]

### B. Cross-Motions for Summary Judgment

Both parties move for summary judgment on the issue of seaworthiness.[27] Also, Westbank moves for summary judgment in its favor on Espinoza's entire Jones Act negligence claim, whereas Espinoza seeks summary judgment on that claim only as to his own contributory negligence.[28] Both sides argue that the facts and the law support their competing positions.[29]

---

[25] The cases cited by Westbank involve foreign workers who were not working legally in the United States or a different economic theory than the one used by Asher and Meyers.

[26] The Court addressed the motion as to both Asher and Meyers because they jointly authored the report. However, the Court will not permit cumulative expert testimony at trial. Espinoza must decide, and inform Westbank and the Court, which expert, Asher or Meyers, will testify at trial.

[27] R. Docs. 26; 28.

[28] R. Doc. 26.

[29] R. Docs. 26; 28; 31; 32.

Having considered the memoranda, the record, and the applicable law, the Court finds that there are disputed issues of material fact regarding the circumstances of the accident that bear upon both seaworthiness (including, for example, whether the vessel should have had a mechanism for securing the pole) and Jones Act negligence (including any contributory negligence on Espinoza's part given that he was solely responsible for setting the pole assigned to him) that preclude summary judgment. These issues must be weighed and resolved by the trier of fact.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Westbank's motion *in limine* (R. Doc. 27) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (R. Doc. 26) is DENIED.

IT IS FURTHER ORDERED that Westbank' motion for summary judgment (R. Doc. 28) is DENIED.

New Orleans, Louisiana, this 8th day of July, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE